**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SHEILA KELLY, individually**
**an on behalf of all others similarly**
**situated**,

**Plaintiff,**

**v.**

**WHITEHAVEN SETTLEMENT**
**FUNDING, LLC, a/k/a Whitehaven**
**S.F., LLC.,**[1]

**Defendant.** **No. 09-0541-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

Now before the Court is Whitehaven Sherwood Forrest, LLC's motion to transfer (Doc. 17).[2] Whitehaven Sherrwood Forrest, LLC ("Whitehaven") argues that the case should be transferred to the District Court for the Southern District of New York as the contract entered between the parties provides that New York law

[1]According to the pleadings, Kelly incorrectly named Defendant as Whitehaven Settlement Funding, Inc. Defendant's correct name is Whitehaven Sherwood Forrest, LLC.

[2]On December 7, 2009, pursuant to **Local Rule 7.1(g)**, the Court granted this motion to transfer as Kelly did not respond timely to the motion (Doc. 19). Also in the Order, the Court denied Plaintiff's motion to remand. That same day, Kelly filed a motion to vacate transfer order, or, in the alternative, to stay transfer order asserting that the response was not filed due to a mistake with her counsel's office support staff and that it is likely that Kelly will immediately appeal the denial of the remand motion. The next day, the Court stayed the transfer Order and allowed Kelly leave to file her response (Doc. 21). On January 11, 2010, the Seventh Circuit Court of Appeals denied Kelly leave to appeal the Order denying the remand motion (Doc. 24).

governs and that the contract also contains an arbitration clause that requires the parties to arbitrate in New York. Thus, the under the mandate of the Federal Arbitration Act and the contract, only the Southern District of New York has the authority to compel arbitration. Obviously, Kelly opposes the motion (Doc. 22). After reviewing the pleadings and the applicable law, the Court finds that this action does not belong in the Southern District of Illinois and lifts the stay on the December 7, 2009 Order transferring this matter to the Southern District of New York.

On June 12, 2009, Plaintiff Sheila Kelly, individually and on behalf of all others similarly situated, filed a three count complaint against Whitehaven in the Madison County, Illinois Circuit Court (Doc. 2-2).[3] According to the complaint, Kelly's cause of action arises out of a contract she entered into with Whitehaven for the "loan" of $25,000. Kelly alleges that the contract is illegal and void and that Whitehaven through fraud engaged in illegal and "Champertous" behavior in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et. seq. Kelly seeks a declaration, an injunction, actual and treble damages in an amount in excess of $50,000.00 and reasonable attorney fees and costs. Thereafter, on July 20, 2009, Whitehaven removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332 (Doc. 2). Prior to the removal in this case, Whitehaven filed a petition to compel arbitration in the Southern District of New York against Kelly pursuant to the arbitration agreement contained in the contract. ***See Whitehaven Sherwood***

[3]As of this date, Kelly has not moved for class certification. Thus, the case is not proceeding as a class action at this time.

***Forest, LLC v. Kelly*, 09-06203-LTS (S.D.N.Y. July 10, 2009)**.

The contract entered between the parties on June 7, 2008 provides in part:

> Plaintiff has the right to prosecute a lawsuit(s), claim(s) and/or case(s) arising out of a incident/accident/transaction resulting from medical malpractice by Gitersonky Foot Clinic and Alan Gitersonky, D.P.M.; and for which Plaintiff has retained The Lakin Law Firm, 301 Evans Avenue, Wood River, Il 62095, to prosecute same;
>
> ...
>
> 5. (a) In consideration for Whitehaven S.F. LLC agreeing to advance **funds in the sum of $25,000.00**, prior to settlement or judgment(s) of Plaintiff's lawsuit, claim(s) or case(s) arising from the accident/incident/transaction as outlined above, Plaintiff agrees to pay and instructs his/her counsel to pay Whitehaven S.F. LLC the **sum of $25,000.00 together with an application fee of $500.00 and an origination fee of $2,500.00 plus 4.99% percent interest, compounded monthly from the date of funding to the date of payment**, at the conclusion of the lawsuit(s), claim(s) or case(s), whether by settlement, judgment or otherwise from the proceeds of recovery of said lawsuit(s), claim(s) or case(s), if any.
>
> (b) **Notwithstanding the foregoing, there shall be a minimum payment due and owing to Whitehaven S.F. LLC of $42,500.00**

As to the applicable law and arbitration forum selection clauses, the contract contains the following:

> 26. Plaintiff acknowledges and agrees that the laws of the State of New York shall control interpretation of this agreement and all terms conditions, relationships and duties of the parties.
>
> 27. Any controversy or claim arising out of or relation to this contract, including without limitation, the interpretation, validity, enforceability or breach thereof, shall be settled by final, binding arbitration administered by the American Arbitration Association (hereinafter referred to as "AAA") in accordance with Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall be a

> practicing attorney or retired judge licensed to practice in the State of New York. The parties also agree that the AAA Optimal Rules for Emergency Measures of protection shall apply to the proceedings. The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of its costs and fees. "Costs and fees" mean all pre-award expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorney's fees. The award shall be in writing, shall be signed by the arbitrator, and shall include a statement regarding the reasons for the disposition of any claim. Arbitration pursuant to this paragraph shall be filed and held in the New York Regional Office located in the county, city and State of New York.

The contract contains Kelly's signature, a signature of someone from The Lakin Law Firm and references Charles Armbruster, Esq., and The Lakin Law Firm throughout the contract.

## II. Analysis

The Federal Arbitration Act ("FAA"), governs arbitration agreements involving interstate commerce. ***See*** **9 U.S.C. § § 1-2**. It provides that a "written provision in any contract to settle by arbitration" any future controversy arising out of such contract." **9 U.S.C. § 2**. Congress designed the FAA "to reverse the longstanding judicial hostility to arbitration agreements ... and to place [them] on the same footing as other contracts." ***Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).** Any doubt with respect to arbitrability therefore should be resolve in favor of arbitration." ***James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (citing *Moses H Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983))**.

Further, Section 4 of the FAA states in relevant part:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition the United States district court which, save for such agreement, would have jurisdiction under Title 28.... The hearing and the proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

**9 U.S.C. § 4**. The venue directive of Section 4 is mandatory and has been interpreted to require "a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995)**; ***Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009)**. Section 4 applies to procedures to both compel and those to enjoin arbitration. In addition, issues such as deciding whether an arbitration provision applies to a certain party or whether it applies to a dispute at all fall under the umbrella of an arbitration provision's scope, validity, and enforceability.

Specifically, Kelly maintains that the arbitration clause is unconscionable both procedurally and substantively. The Court rejects Kelly's arguments.

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." ***Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)( citing**

***Frank's Maint. & Eng'g v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill.App. 1st Dist.1980)); *Kinkel v. Cingular Wireless*, 857 N.E.2d 250, 264 (Ill. 2006)**. The factors to be considered include the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print. ***Frank's Maint.*, 408 N.E.2d at 410**. The totality of the circumstances should be considered to determine whether a contract provision is procedurally unconscionable. ***Id.***; ***Kinkel*, 857 N.E.2d at 264**.

The contract is written in Times New Roman font and it is easy to read. The arbitration clause is not hidden in fine print (as there is not fine print in the contract) and is clearly displayed. The Lien and Attorney Acknowledgment to the contract is signed by someone from The Lakin Law Firm. The contract advises Kelly that her attorney should review it before signing it and it could be canceled within three (3) days. Under the totality of the circumstances, the Court finds that the arbitration provision is not procedurally unconscionable.

Next, Kelly contends that it is substantially unconscionable as she is destitute and cannot afford to litigate or arbitrate in New York. The Court does not agree.

Under Illinois law, unconscionability may be either procedural, substantive, or both. ***Razor*, 854 N.E.2d at 622; *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 569 (Ill.App.2d Dist.2008)( citing Kinkel, 857 N.E.2d**

**250).** Substantive unconscionability refers to contract terms that are so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. ***Kinkel*, 857 N.E.2d at 267; *Razor*, 854 N.E.2d at 622**.

As to costs, in a letter from Whitehaven's counsel to Kelly's counsel, Whitehaven agreed to waive its right to an in-person hearing, to allow the depositions of parties and witnesses by phone, and to allow the arbitrator to decide the matter on the documents or via a phone hearing. The AAA rules permit telephone arbitrations and provide for fee waivers for financially needy claimants. Additionally, AAA also provides pro bono arbitrations for individuals who "might otherwise be financially unable to pursue his or her rights in the arbitral forum." Accordingly, the Court cannot conclude that arbitration of this action is prohibitively expensive. Therefore, the Court will not invalidate the mandatory arbitration clause based Kelly's assertion that it is substantially unconscionable.

The Court finds that the arbitration clause is valid and mandates arbitration in another district. The Court must enforce the terms of the clause as written and agreed to by the parties. ***Livingston v. Assoc. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003)** Pursuant to Section 4 of the FAA, this Court is not the correct forum to decide Kelly's claims. The Southern District of New York is the proper venue to rule on the validity of contract. Furthermore, Whitehaven has already filed its petition to compel arbitration in New York. That said, the interests

of judicial economy warrant the transfer of this case to the Southern District of New York.

## III. Conclusion

Accordingly, the Court **CONFIRMS** its December 7, 2009 Order transferring this case to the Southern District of New York (Doc. 19) and **LIFTS** the December 8, 2009 Stay Order (Doc. 20). Pursuant to 28 U.S.C. § 1406(a), the Court **TRANSFERS** this matter to the Southern District of New York.

**IT IS SO ORDERED.**

Signed this 26th day of February, 2010.

/s/ DavidRHerndon

**Chief Judge**
**United States District Court**